UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

:
JOSEPH SZAPOWAL,                :
                                :     CASE NO. 1:13-CV-02078
        Plaintiff,              :
                                :
v.                              :     OPINION & ORDER
                                :     [Resolving Docs. 1, 17]
COMMISSIONER OF SOCIAL          :
SECURITY ADMINISTRATION,        :
                                :
                                :
        Defendant.              :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On October 16, 2014, Magistrate Judge James R. Knepp II recommended that the Court affirm the Commissioner of Social Security's denial of disability insurance benefits ("DIB") and supplemental security income ("SSI") to Plaintiff Joseph Szapowal.[1] Plaintiff has filed objections to the Report and Recommendation ("R&R").[2] Nevertheless, because substantial evidence supports the Administrative Law Judge's (ALJ's) conclusions, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the Magistrate Judge's R&R and **AFFIRMS** the Commissioner's decision.

**I. Factual and Procedural Background**

On October 20, 2010, and October 28, 2010, Plaintiff filed applications for DIB and SSI benefits, alleging disability due to multiple sclerosis ("MS") and depression since February 15,

---

[1] Doc. 17.
[2] Doc. 20.

Case No. 1:13-CV-02078
Gwin, J

2009.[3/] After the Social Security Administration denied his applications,[4/] Plaintiff requested a hearing with an ALJ.[5/] On April 19, 2012, Administrative Law Judge Patrick J. Rhoa held a hearing on Plaintiff's applications.[6/] A neutral vocational expert testified at this hearing.[7/]

At the hearing, Plaintiff testified that he had (1) depression, (2) problems sleeping, (3) MS, (4) weakness in his hands, (5) headaches, and (6) difficulty dealing with hot and cold temperatures.[8/] Plaintiff also testified that he experienced sudden, sharp pains that can drop him to his knees.[9/] Further, Plaintiff noted that there were no problems with his attendance at his previous jobs, but that he required a lot of breaks during his workday.[10/]

On May 24, 2012, the ALJ denied Plaintiff's applications.[11/] Although the ALJ determined Plaintiff had severe impairments of MS and depression, the ALJ found that these impairments did not, either together or separately, constitute a medically listed impairment.[12/] The ALJ then found that Plaintiff had a residual functional capacity ("RFC") to perform light work with restrictions.[13/] Specifically, the ALJ found that Plaintiff can (1) finger and handle bilaterally, (2) perform simple and more complex tasks in an environment with routine changes, (3) ask questions appropriately in a work setting, (4) understand four- and five-step instructions, (5) perform work with no strict

---

[3/] Doc. 11 at 10.
[4/] *Id.* at 145, 148, 158, 165.
[5/] *Id.* at 173.
[6/] *Id.* at 29.
[7/] *Id.* at 65.
[8/] *Id.* at 45, 46-47, 57, 58, 63.
[9/] *Id.* at 45.
[10/] *Id.* at 55.
[11/] *Id.* at 7.
[12/] *Id.* at 12-13.
[13/] *Id.* at 12.

Case No. 1:13-CV-02078
Gwin, J

production quotas and with frequent contact with the general public, co-workers, and supervisors, and (6) work a job where he is off task only 5 percent of the time.[14]

Based on this RFC and vocational expert testimony, the ALJ concluded that Plaintiff could work as a sales attendant, counter clerk, and packer.[15] Because sufficient numbers of those jobs exist in the national economy, the ALJ concluded that Plaintiff had not established a right to SSI or DIB.[16] Plaintiff's request for appeal was denied, rendering the ALJ's decision the final decision of the Commissioner.[17]

On September 19, 2013, Plaintiff filed suit to challenge the Commissioner's decision.[18] Magistrate Judge Knepp has issued an R&R, recommending that the Commissioner's decision be affirmed.

## II. Legal Standard

To establish disability under the Social Security Act, a claimant must show that he is unable to engage in any substantial gainful activity because of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."[19] Social Security regulations establish a five-step sequential evaluation to determine whether the claimant is disabled.[20] The claimant's impairment must prevent him from doing his previous work as well as any other work existing in significant

---

[14] *Id.*
[15] *Id.* at 22.
[16] *Id.*
[17] *Id.* at 1, 6.
[18] Doc. 1.
[19] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).
[20] 20 C.F.R. §§ 404.1520, 416.920.

Case No. 1:13-CV-02078
Gwin, J

numbers in the national economy.[21]

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of a Report and Recommendation to which the parties have made an objection.[22] A final decision of the Social Security Commissioner made by an ALJ is not, however, reviewed *de novo*. A district court determines only whether the ALJ's decision was "supported by substantial evidence and was made pursuant to proper legal standards."[23]

Substantial evidence is relevant evidence that a "reasonable mind might accept as adequate to support a conclusion."[24] The substantial evidence standard requires more than a scintilla, but less than a preponderance of the evidence.[25] In deciding whether substantial evidence supports the ALJ's decision, a court should not try to resolve conflicts in evidence or decide questions of credibility.[26] The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ.[27] When substantial evidence supports the ALJ's decision, a court may not reverse, even if the court would have reached a different conclusion.[28]

### III. Analysis

Plaintiff objects to (1) the finding that substantial evidence supports the ALJ's RFC, (2) the finding that the ALJ adequately evaluated the opinions of Plaintiff's former employers and family members, and (3) the finding that the ALJ had sufficient reason to discount the opinions of Plaintiff's

---

[21] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
[22] 28 U.S.C. § 636(b)(1).
[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).
[24] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks omitted).
[25] *See id.*
[26] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).
[27] *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).
[28] *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).

Case No. 1:13-CV-02078
Gwin, J

treating physician. The Court will address each objection in turn.

**A. Substantial Evidence Supports the RFC**

Plaintiff's first objects that the "Magistrate Judge incorrectly found that the [RFC] established by the ALJ was supported by substantial evidence."[29] Specifically, Plaintiff objects to the ALJ's determination that Plaintiff would only be off task 5 percent of time.[30]

A claimant's RFC is an administrative assessment of "the most [he] can still do despite [his] limitations."[31] The RFC is based upon all relevant evidence, including medical records, medical source opinions, and the claimant's subjective allegations and description of his own limitations.[32] When a claimant's statements about a symptom are not supported by medical evidence, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."[33]

In the present case, the Court finds that substantial evidence exists to support the ALJ's RFC finding. The treatment notes and opinions of Drs. Vitkus, Konieczny, Tangeman, and Waddel all support the ALJ's finding that Plaintiff would not have significant restrictions staying on task.

Dr. Vitkus found that although Plaintiff feels "scatterbrained" at times, he had no problems with "high motivation topics."[34] Indeed, Dr. Vitkus consistently found that Plaintiff had average to above average intelligence, good fund of knowledge, and an intact memory.[35] As the ALJ noted, these findings conflict with Dr. Vitkus's opinion that Plaintiff would be limited in his ability to

---

[29] Doc. 20 at 2.
[30] *Id.*
[31] 20 C.F.R. §§ 404.1545, 416.945(a)(1).
[32] *Id.*
[33] Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2.
[34] Doc. 11 at 569.
[35] *Id.* at 563.

Case: 1:13-cv-02078-JG Doc #: 23 Filed: 02/23/15 6 of 11. PageID #: 753

Case No. 1:13-CV-02078
Gwin, J

understand, remember, and carry out complex job instructions.[36] Additionally, Drs. Tangeman,[37] Waddel,[38] and Konieczny[39] all found that Plaintiff's ability to concentrate and attend to tasks showed no indications of impairment. Nevertheless, the ALJ adopted a more restrictive RFC, finding that Plaintiff has moderate difficulties with concentration, persistence, and pace.[40]

Plaintiff cites to *Bankston v. Commissioner of Social Security*[41] and *Green v. Commissioner of Social Security*[42] for the proposition that moderate concentration limitations mean drifting off twenty to thirty percent of the time at work. Those two decisions are not binding on this Court. Furthermore, the cases are unpersuasive because they fail to cite any authority for the twenty to thirty percent figure. Further, this Court and others in the Sixth Circuit have declined to follow *Bankston* and *Green* or distinguished them.[43]

Plaintiff further contends that the Magistrate Judge improperly considered evidence of Plaintiff's daily activities. This argument misses the mark. The Sixth Circuit has noted that an ALJ, when evaluating a claimant's alleged symptoms, must consider the individual's daily activities.[44] As such, neither the Magistrate Judge nor the ALJ erred in considering evidence of Plaintiff's daily activities.

---

[36] *Id.* at 17.
[37] *Id.* at 86-87.
[38] *Id.* at 113-14.
[39] *Id.* at 501-04.
[40] *Id.* at 14.
[41] 127 F. Supp. 2d 820 (E.D. Mich. 2000).
[42] 2009 WL 2365557 (E.D. Mich. July 28, 2009).
[43] *See, e.g.*, *Eason v. Colvin*, 2014 WL 2114710 (N.D. Ohio May 20, 2014); *Schanck v. Comm'r of Soc. Sec.*, 2014 WL 1304816 (E.D. Mich. Mar. 31, 2014); *Coney v. Comm'r of Soc. Sec.*, 2014 WL 642225 (W.D. Mich. Feb. 19, 2014); *Smith v. Comm'r of Soc. Sec.*, 2013 WL 6094745 (E.D. Mich. Nov. 20, 2013); *Walker v. Comm'r of Soc. Sec.*, 2013 WL 5279077 (N.D. Ohio Sept. 18, 2013).
[44] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3.

Case No. 1:13-CV-02078
Gwin, J

Plaintiff is correct to note that engaging in the activities of daily life does not in and of itself mean that Plaintiff is not disabled. But that is not what either the Magistrate Judge or the ALJ concluded. Instead, they supplemented the record medical evidence, which showed Plaintiff's ability to maintain concentration and attention, with evidence from Plaintiff's daily life indicating the same. The medical opinions noted above, along with evidence that Plaintiff maintained concentration and attention while completing the activities of daily living, provide substantial evidence to support the ALJ's decision.

Finally, Plaintiff's attempts to re-weigh the evidence fail as a matter of law.[45] Even if substantial evidence exists in the record to support a different conclusion, the findings of the ALJ are not subject to reversal if there is substantial evidence to support the ALJ's decision.[46] Here, the record supports a finding that the ALJ's decision was supported by substantial evidence.

As such, Plaintiff's First Objection to the R&R is **OVERRULED**.

## B. The ALJ Adequately Evaluated the Opinions of Non-Medical Sources

Social Security regulations provide that in addition to medical sources an ALJ "may also use evidence from other sources to show the severity of [claimant's] impairments and how it affects [his] ability to work."[47] "Other sources" include non-medical sources such as "spouses, parents and other caregivers, siblings, other relatives, neighbors, and clergy."[48] Since an ALJ must consider all relevant evidence, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows . . . a

---

[45] *Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 465 (6th Cir. 2004).
[46] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1996) and *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).
[47] 20 C.F.R. §§ 404.1513, 416.913.
[48] *Id.*, §§ 404.1513(d)(4), 416.913(d)(4).

-7-

Case No. 1:13-CV-02078
Gwin, J

subsequent reviewer to follow the [ALJ's] reasoning."[49]

Plaintiff contends that the Magistrate Judge erred when he found that the ALJ complied with the above regulations. Plaintiff's argument fails. The ALJ considered witness statements from Plaintiff's mother and former employer that Plaintiff "has difficulties with his concentration."[50] As the ALJ specifically noted, these statements are inconsistent with the weight of medical evidence presented.[51] In sum, the ALJ followed the regulatory guidelines in considering evidence from non-medical sources.

As such, Plaintiff's Second Objection is **OVERRULED**.

**C. The ALJ Followed Regulations in Evaluating the Treating Physician's Opinions**

The Social Security Administration imposes certain standards on the assessment of medical source evidence.[52] Under what is commonly called the treating physician rule, the Commissioner has mandated that an ALJ "will" give a treating source's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."[53]

If the ALJ does not give the treating source's opinion controlling weight, he must apply certain factors to determine what weight to give it. These factors are "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the

---

[49] Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6.
[50] Doc. 11 at 14.
[51] *Id.*
[52] 20 C.F.R. § 404.1502.
[53] *Id.*, § 404.1527(c)(2).

Case No. 1:13-CV-02078
Gwin, J

specialization of the treating source."[54]

The Commissioner requires its decision makers to "always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinions." Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[55] This requirement exists, in part, to let the claimant understand the disposition of his case, especially in situations where his physician has deemed him disabled while the Social Security Administration has not.[56] The requirement also ensures that a court can conduct a meaningful review of an ALJ's application of the rule.[57]

In this case, the ALJ found that Dr. Vitkus was Plaintiff's "treating psychologist."[58] The ALJ gave great weight, with several specific exceptions, to Dr. Vitkus's opinions.[59] The ALJ did not give great weight to Dr. Vitkus's opinions that Plaintiff could only understand, remember, and carry out complex job instructions during 50 percent of an 8-hour workday; that Plaintiff's anxiety and depression are in the moderate to severe range; and that Plaintiff would be absent from work more than four times a month.[60]

As per agency regulations, the ALJ offered reasons for discounting Dr. Vitkus's opinions. The ALJ noted that Plaintiff did not demonstrate any difficulties in concentration, attention,

---

[54] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2)(i) and (ii).
[55] Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.
[56] *Wilson*, 378 F.3d at 544.
[57] *Id.*
[58] Doc. 11 at 13.
[59] *Id.* at 17-18.
[60] *Id.* at 17.

-9-

Case No. 1:13-CV-02078
Gwin, J

persistence, and pace when evaluated by Dr. Konieczny. Further, the ALJ noted that Plaintiff's daily activities, global assessment of functioning ("GAF")[61] score, and medical records were inconsistent with Dr. Vitkus's opinions regarding the severity of Plaintiffs' depression and the estimated frequency of his absences from work.[62] Contrary to Plaintiffs' objection, the ALJ did not err in relying on the GAF scores as one of the many pieces of evidence that contradicted portions of Dr. Vitkus's opinion.[63]

Thus, the ALJ provided good reasons for why he did not give great weight to portions of Dr. Vitkus's opinion and why he did not give the opinion as a whole controlling weight. The ALJ determined that parts of Dr. Vitkus's opinion were inconsistent with other medical evidence and thus did not give controlling weight to the opinion as whole. But the ALJ did give great weight to the portions of Dr. Vitkus's opinion that conformed to the record's evidence.

As such, Plaintiff's Third Objection to the R&R is **OVERRULED**.

## IV. Conclusion

The Court **OVERRULES** each of Plaintiff's objections to Magistrate Judge Knepp's R&R. Further, the Court has reviewed the Magistrate Judge's other recommendations and finds them to be correct. Accordingly, the Court **ADOPTS** Magistrate Judge Knepp's R&R and **AFFIRMS** the Commissioner's denial of benefits.

---

[61] The GAF scale represents a clinician's judgment of an individual's symptom severity or level of functioning. Doc. 17 at 5 (citing *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000). A GAF score of 51-60 indicates Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

[62] Doc. 11 at 17-18.

[63] *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 177 (6th Cir. 2009) ("Dr. Ashbaugh consistently estimated Price's global assessment of functioning ("GAF") score to be in the mid–50s, indicating only "moderate" symptoms. On this record, we find no error in the ALJ's conclusion that Dr. Ashbaugh's assessment that Price's impairments were debilitating was inconsistent with his treatment notes and prior assessments.").

Case No. 1:13-CV-02078
Gwin, J

  IT IS SO ORDERED.


Dated: February 23, 2015        s/  *James S. Gwin*

                JAMES S. GWIN
                UNITED STATES DISTRICT JUDGE